**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SEAN PRESSLEY,** | : |
| **Plaintiff,** | : |
| **v.** | :   **CIVIL ACTION NO. 3:08-0449** |
| **ADAM HUBER, et al.,** | :       **(Mannion, J.)[1]** |
| **Defendants.** | : |

## MEMORANDUM

Presently pending before the court is the motion for summary judgment of Defendants. (Doc. 99). The motion is ripe and will be granted in part and denied in part. However, the parties will be afforded until April 21, 2017, to file supplemental summary judgment motions, together with supporting briefs and exhibits, limited to the incomplete issue of exhaustion of administrative remedies as noted below. If none are filed within the time allotted, the matter will be scheduled for a final pre-trial conference and trial at the convenience of the court.

## I.    Background

Sean Pressley ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. §1983 with respect to an incident that occurred at the State

---

[1]This matter was reassigned to the undersigned on February 21, 2017.

Correctional Institution ("SCI") at Camp Hill, Pennsylvania, his former place of confinement. He is currently confined at SCI-Frackville. Following the resolution of a motion to dismiss and a long, tortured discovery process, the following three claims remain: (1) excessive force on October 30, 2006, by Defendants Huber, Zimmerman, Yohn, Gerber, Ayers, Tabias and Taylor; (2) failure to protect from this assault by Defendants Steigerwalt, March, Chambers, Taggart, Kelchner, O'Hara and Beard; and (3) the denial of due process when Defendant Moslak assessed Plaintiff costs at a misconduct hearing on November 1, 2006, without evidence, and Defendants Kelchner and Bitner refused or denied his appeal.

Defendants move for summary judgment on the first two claims on the basis of Plaintiff's failure to exhaust. They move for summary judgment on the third claim on the basis that Plaintiff was provided by policy with notice and the opportunity to be heard regarding the assessment, and also that none of the Defendants personally assessed Plaintiff the costs owed of $694.00. In support of the motion, Defendants have filed a brief, a statement of material facts, and documents. Plaintiff has opposed Defendants' motion by filing a response to the statement of facts, an unsworn declaration, and a brief. Although Plaintiff references supporting exhibits, there are none attached to his submissions, and he states in an attached letter that he is in the process of acquiring copies of the exhibits and will submit them subsequent to the filing of the statement of facts, declaration and brief. (Docs. 118-1 at 3; 119-1

at 2.)

The letter written by Plaintiff is old, and the referenced exhibits have never been submitted to the court. This is supported by the docket in this matter. Moreover, although some of the exhibits referenced by Plaintiff have been submitted by Defendants, and therefore are part of the record, many of the exhibits referenced are not part of the record, and therefore cannot be relied upon in examining the summary judgment motion.

## II.    Statement of Undisputed Facts

Plaintiff is currently incarcerated at the SCI- Frackville. He claims that he was subjected to excessive force on October 30, 2006 at SCI-Camp Hill by Defendants Zimmerman, Huber, Yohn, Gerber, Ayers, Tabias and Taylor. The later five Defendants were identified by Plaintiff on May 17, 2010.[2] (Doc. 49.) Plaintiff further maintains that Defendants Steigerwalt, Marsh, Chambers, Taggart, Kelchner, O'Hara and Beard failed to protect him from this assault in that he was writing to them since June of 2003 notifying them that he was being stalked and harassed by Defendant Huber, but that he was never taken

---

[2]

These defendants were originally unknown to Plaintiff when he filed this action. Although he did not list them as "Unknown Defendants" in the caption of the complaint, he did refer to them in paragraph 15 of the complaint by stating that ". . . other corrections officers whose identity is unknown at this time arrived and also begin (sic) to punch Plaintiff in the face, head and upper body area." (Doc. 1-2 at 3.)

seriously. As such, the attack was predictable and could have been prevented. Also surviving in this action is Plaintiff's claim that he was denied due process when Defendant Moslak assessed him $694.00 at a misconduct hearing conducted on November 1, 2006, without evidence, and that Defendants Kelchner and Bitner refused or denied his appeal. Defendants have filed a motion for summary judgment stating that the first two claims raised by Plaintiff are unexhausted, and that they are entitled to summary judgment on the merits of the third claim.

The Department of Corrections ("DOC") has an Inmate Grievance System that provides an administrative procedure through which inmates can seek resolution of their problems. It is contained in DC-ADM 804. (Doc. 102-1, Ex. A.). If informal resolution fails, the Grievance Policy of the DOC provides a three-step process for resolution of inmate grievances. The three-step process is comprised of the initial grievance at the institutional level, an appeal to the Facility Manager (Superintendent) and final review with the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). (Id.) Plaintiff disputes an inmate's ability to "file or appeal" a grievance because they must submit them to Unit Officer for deposit into the inter-facility or U.S. Mail collection box on their housing unit, but he offers no support for this statement. Thus, while he disputes the purpose behind DC-ADM 804, he fails to offer any support for his statement. He does not dispute, however, that inmates received the DOC Inmate Handbook providing inmates with notice of

the grievance policy and the requirements they must meet to grieve their issues through the grievance policy. (Doc. 102-2, Ex. B, Moore Decl.) Keri Moore works in the SOIGA and reviews the grievances and appeals, and is aware of what grievances are appealed to the SOIGA. She is the records custodian for all of the Grievance appeals submitted. (Id.)

During his confinement at SCI-Camp Hill, Moore found that Plaintiff had filed 8 grievances (October 1, 2006 through December 31,2006) and only appealed 1 grievance to final review with the SOIGA. The grievance appealed to final review was #165779 filed on October 4, 2006, and involved a medical issue. (Id.; Doc. 101-3, Ex. C, Grievance Chart). Plaintiff does not dispute that this grievance was exhausted. However, Plaintiff disputes that he only filed 8 grievances and appealed 1 of them to final review. He fails to submit any proof of the other grievances he claims to have submitted, or that they were properly filed and appealed to final review.

Defendants state that the only grievance filed concerning the October 30, 2006 excessive force incident was Grievance 173331, which was filed on December 3, 2006, and deemed resolved on February 5, 2007. It was appealed to the Superintendent on February 8, 2007, and dismissed on February 16, 2007. No appeal was filed to final review with respect to Grievance 173331. (Doc. 102-3, Ex. C, Grievance Chart; Doc. 102-4, Ex. D, Grievance 173331). Again, Plaintiff disputes these statements, but offers no proof. He relies on past statements that he submitted grievances and appeals

for mailing to unit officers, but that they were never mailed/processed.

The DOC also has an Inmate Discipline Policy that provides the administrative procedure for addressing inmate violations of the DOC rules and policy. It is contained in DC-ADM 801. (Doc. 102-5, Ex. E.). If an inmate violates a rule or regulation, the matter is resolved either informally or formally. If resolved formally, a misconduct is issued. There is an appeal process for the inmate with respect to the misconduct issued and it is contained in DC-ADM 801. A hearing is conducted by the Hearing Examiner and then the matter goes to the Facility Manager for review. Appeals follow to the Program Review Committee ("PRC") initially, to the second level of the Facility Manager, and then to final review with the Office of Chief Counsel. (Id. at 12-17.). If misconducts involve financial loss or cost because of an inmate's behavior, the Hearing Examiner may impose costs against the inmate in accordance with DC-ADM 801 policy. (Id. at 12, 13). If the cost is unknown at the time of the hearing, the Hearing Examiner gives the Business Manager notice of the order to pay costs and the Business Manager determines the amount of the loss or costs. The notice of the assessment is delivered to the inmate by the Business Manager. (Id. at 13, 19-22).

Plaintiff does not dispute that Hearing Examiner Moslak did not know the costs of the medical care provided to staff at the time of the hearing. However, Plaintiff disputes Defendants' statement that Hearing Examiner Moslak found him guilty of assault and determined that injuries were

sustained by staff who sought medical treatment. (Doc. 102-7 at 3-4; Doc. 102-8 at 3-4). Plaintiff argues that there was no evidence presented at the hearing pertaining to the injury suffered or medical treatment received. In support of this statement, Plaintiff cites to "Exhibit 33" which was never submitted. Defendants also state that an inmate can challenge the assessment by requesting a hearing. Plaintiff disputes Defendants' statement and cites to DC-ADM 801 VI(O)(3)(a) in support thereof. Plaintiff does agree that a cost hearing can be appealed, and that Defendant Hearing Examiner Zachary Moslak is aware that Plaintiff has alleged that Moslak violated due process at the misconduct hearing wherein Plaintiff was assessed medical expenses of $694. (Id. at 22; Doc. 102-6, Ex. F.). Defendants state that Moslak did not assess Plaintiff costs owed at $694 on November 1, 2006. In support of this statement, they submit the Declaration of Moslak and the misconduct reports issued on October 30, 2006. (Docs. 102-6; Doc. 102-7 and Doc. 102-8.) Plaintiff disputes Defendants' statement that Moslak did not assess Plaintiff costs owed as $694 on November 1, 2006. He offers no support other than his self-serving statement that Moslak "did assess liability for costs. . . ." (Doc. 119, Pl.'s SMF ¶ 37.) Plaintiff agrees that the misconducts issued on October 30, 2006, A 635625 and A 635626, memorialize the results of the November 1, 2006 misconduct hearing. (Docs 102-7, 102-8).

Defendants move for summary judgment on the first two claims

(excessive force and failure to protect) on the basis that Plaintiff failed to exhaust pursuant to DC-ADM 804. They seek summary judgment on the merits of the third claim (due process) claiming there exist no issues of fact that Plaintiff had notice of the cost sanction and an opportunity to be heard, and also that none of the Defendants named in this action were personally involved in assessing him $694.

## III.    Summary Judgment Standard

Through summary adjudication, the court may dispose of those claims that do not present 'genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. Anderson, 477 U.S. at 248.

8

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(b). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment.

Id. (internal quotations and citations omitted).


## IV.    Discussion

### A.    Exhaustion of Administrative Remedies

Defendants seeks an entry of summary judgment with respect to the excessive force claim and the failure to protect claim brought against them based on Plaintiff's failure to properly exhaust available administrative review procedures. (Doc. 100 at 6.). Specifically, Defendants argue that Plaintiff failed to properly exhaust his excessive force and failure to protect claims pursuant to DC-ADM 804. As such, Defendants maintain that due to Plaintiff's failure to exhaust, that they are entitled to summary judgment on the first two claims.

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. §1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637,

10

639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001)(holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000)(same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

Further, the PLRA mandates that an inmate "properly exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 2018)(concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr., 388 F. App'x 107, 108 (3d Cir. 2010)("An inmate must exhaust his administrative remedies prior to filing a civil action in federal court.")(emphasis added). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d at 228, 235. "As for the failure to [] identify [the] named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to

properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies; instead, failure to exhaust available administrative remedies is an affirmative defense. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Therefore, it must be pleaded and proven by Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania DOC has established several methods by which Pennsylvania inmates can grieve their claims of abuse before seeking redress in federal court. First, the Pennsylvania DOC has an "Inmate Abuse Allegation Monitoring" policy expressing the principle that an inmate should "not [be] subjected to corporal or unusual punishment, **or personal abuse or injury**." DOC Policy Statement DC-ADM 001, "Inmate Abuse Allegation Monitoring," Part V, "Policy," available at http://www/cor.state.pa.us (emphasis in original). In part, "abuse" is defined in the policy as "[c]onduct by an employee ... that involves ... the use of excessive force upon an inmate," but which excludes "conditions of confinement." Id., Part IV(A), "Definitions." An inmate can report abuse in three ways:

1.     report it verbally or in writing to any staff member;

2.     file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievance System;" or

3.      report it in writing to the Department's Office of Professional Responsibility ("OPR").

Id., Part VI(D), "Procedures."

Further, the Pennsylvania DOC has an inmate grievance system that consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. DC-ADM 804, §1(A)(9). "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, §1(A)(12). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. DC-ADM 804, §2(A)(1). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the SOIGA. DC-ADM 804, §2(B). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural

13

requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App's 275, 279 (3d Cir. 2011)(same).

Here, Defendants only base their summary judgment exhaustion argument on DC-ADM 804 with respect to both the excessive force and the failure to protect claims. In addressing these claims, the Defendants offer the grievance policy of DC-ADM 804 (Doc. 102-1, Ex. A), the declaration of Keri Moore, the administrative assistant and records custodian in the SOIGA (Doc. 102-2, Ex. B), the grievance chart, which reflects what grievances were filed and exhausted by Plaintiff during the relevant time period (Doc. 102-3, Ex. C), and the grievance records related to Grievance #173331 - the only grievance filed with respect to the issue of excessive force, according to Defendants (Doc. 102-4) and which was not fully exhausted.

The court agrees with Defendants that according to the record, Plaintiff has failed to exhaust both his excessive force claim and his failure to protect claim through DC-ADM 804. While Plaintiff maintains that he was prevented from exhausting his excessive force claim, and that he filed an amendment to his grievance raising the failure to protect claim, he offers no support for his contentions. It is well established that the PLRA requires exhaustion of all available remedies, not all remedies. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Moreover, conclusory denials and speculative claims are not

14

sufficient to overcome any claims of exhaustion properly supported by the record. "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969)). The many arguments advanced by Plaintiff that staff thwarted his efforts to exhaust are not supported by the record. While the court has looked at the documents submitted by Defendants that are a part of the record, Plaintiff has not contradicted the evidence submitted by Defendants, even though he claimed that he was going to submit exhibits to the court. Neither the court nor Defendants ever received any such documentation from Plaintiff, and the docket verifies this. Moreover, even after Defendants filed their reply brief in this matter, Plaintiff did not respond to this argument regarding his lack of submissions.

However, while the court finds that summary judgment is warranted on the failure to protect claim, as it clearly was not raised or properly exhausted through DC-ADM 804 based on the undisputed record, such is not the case with respect to the excessive force claim. Although Defendants claim that Plaintiff failed to exhaust his excessive force claim under DC-ADM 804 and move for summary judgment on this basis, there are other ways to exhaust with respect to a claim of inmate abuse. See McCain v. Wetzel, Civ. No. 1:12-CV-0789, 2012 WL 6623689 at *6 (Oct. 26, 2012). As stated earlier, a claim of abuse can be grieved either under DC-ADM 804 or by reporting it under

DC-ADM 001.

Here, Defendants have not addressed DC-ADM 001 or moved for summary judgment on said basis. Even after Plaintiff cited to DC-ADM 001, Defendants did not address the matter. The court is not rendering any opinion as to whether Plaintiff has or has not exhausted his excessive force claim under DC-ADM 001, as such would be improper. However, the record reflects that Plaintiff filed a grievance (#173331) against Defendants Huber and Zimmerman and other officers concerning excessive force. The record also shows that Ian Taggart, Corrections Superintendent Assistant, responded to the grievance on December 22, 2006, and informed Plaintiff that his grievance would be responded thereto in accordance with DC-ADM 001, "Inmate Abuse Allegation Monitoring." (Doc. 102-4 at 3). Moreover, Plaintiff was told that the ten (10) day response period was waived and that the deadlines established by DC-ADM 001 would be used in determining when a response was due on his complaint. (Id.)

The record further reflects that on February 5, 2007, Captain D.B. Orwig, the Intelligence Captain, was the Grievance Officer, and responded thereto. He informed Plaintiff that the Security Office recently completed a review/investigation into his complaint that he was assaulted on October 30, 2006, and that no credible evidence of any such assault was found based on the available documentation. To the contrary, reports indicated that it was Plaintiff who assaulted staff, and that the matter had been referred to the

Pennsylvania State Police for possible criminal charges. Plaintiff was further advised that in accordance with the Inmate Abuse Allegation Monitoring Process, the investigation would be reviewed by the appropriate SCI Administrative Staff and the Office of Professional Responsibility. Plaintiff was informed that the matter was considered "resolved" and that no further action would be taken. (Doc. 102-4 at 4.)

There are no facts in the record with respect to when the OPR review was conducted and the results of any report that was issued. Further, while Plaintiff has not offered any support, he claims to have sent a request directly to the OPR. If so, this is another possible method of exhaustion. Defendants have not addressed any exhaustion attempts under DC-ADM 001 and, as such, the court will not find on this record that Plaintiff has failed to exhaust his excessive force claim.

With respect to the misconducts he was issued, Plaintiff filed appeals from his misconduct hearings pursuant to DC-ADM 801 to the PRC. (Docs. 102-7 at 5; 102-8 at 5). The PRC found that the procedure in the misconduct hearings was correct and that the evidence was sufficient. As such, the PRC upheld the decision of the Hearing Examiner with respect to both appeals. Appeals were then filed by Plaintiff to Superintendent Donald L. Kelchner, who denied them as untimely. (Docs. 102-7 at 6; 102-8 at 6). Chief Hearing Examiner Robert S. Bitner later accepted Plaintiff's appeal with respect to both misconducts for final review. Bitner found that Plaintiff had attempted to

17

complete his appeal to the second level, and therefore reviewed the matter. However, Bitner found that after reviewing the record, the appeal should be denied. (Doc. 102-8 at 7). Neither the issue of excessive force or the issue of failure to protect were pursued by Plaintiff in the context of his misconduct appeals. This is evidenced by the record before the court.

Based on the foregoing, it is clear that the failure to protect claim was never exhausted according to the documents in the record. While it appears that the excessive force claim was not properly exhausted pursuant to DC-ADM 804, and the issue of excessive force was not raised in the appeals from the misconducts, Defendants did not move for summary judgment on the basis of failure to exhaust the excessive force claim pursuant to DC-ADM 001. As such, the issue of exhaustion pursuant to DC-ADM 001 will not be considered, and summary judgment on the basis of exhaustion will be granted only with respect to the failure to protect claim against all of the Defendants named in said claim. The excessive force claim will not be dismissed for failure to exhaust on this record.

## B.    Denial of Due Process when cost assessed

Defendants also seek summary judgment with respect to the denial of due process with respect to the cost assessment. It has already been determined that Defendants' motion to dismiss should be granted with regard to all due process claims raised with the exception of the assessment of damages claim. Defendants claim that they are entitled to summary judgment

on this claim because Defendant Moslak, the Hearing Examiner, did not assess the $694 at the misconduct hearing because the costs were unknown at the time. Rather, they state that the matter was referred to the business manager of the institution for determination of the cost. As such, Defendants maintain that they are entitled to summary judgment because none of them are the business manager, and therefore lack personal involvement in any subsequent assessment for $694 against Plaintiff. They state that this is all supported by the record.

In response thereto, Plaintiff states that he is not arguing that Moslak assessed the $694. Rather, he claims that he is challenging the actual assessment of costs against him due to the lack of evidence, and not the actual amount assessed against him.

Summary judgment will be granted in favor of Defendants on this claim for the following reasons. The record shows that DC-ADM 801 allows as a sanction the assessment of costs if an inmate is found guilty of a misconduct which involves financial loss or cost because of the inmate's behavior. (Doc. 102-5 at 12, DC-ADM 801 VI (I)(5) and (O); Doc. 102-6 ¶¶ 5-7.) There is no dispute that the Hearing Examiner did not assess $694 at the misconduct hearings. The cost of injury to Defendants Huber and Zimmerman was unknown to the Hearing Examiner at the time of the hearing. (Doc. 102-6 ¶¶ 13, 14). Rather, Plaintiff argues that the record does not contain evidence that the actual assessment of costs as a sanction was proper by the Hearing

19

Examiner. The court finds that no due process violation occurred here.

First, the misconduct records speak for themselves. Hearing Examiner Moslak made all determinations of credibility and then memorialized his findings. This is part of the record. He found that Plaintiff was guilty of assault and determined that injuries were sustained by staff who sought medical treatment for their injuries. (Doc. 102-5 at 9; Doc. 102-6 ¶ 12). In particular, the Hearing Examiner found that despite Plaintiff's plea of not guilty to the charges of assault, he submitted a written version admitting to throwing punches at Defendant Zimmerman (Doc. 102-7 at 3), and that he threw punches at Defendant Huber in his mouth and head (Doc. 102-8 at 3). Moslak believed Defendants over Plaintiff, and also found that Zimmerman and Huber were both treated outside of the facility for the injuries they sustained. (Docs. 102-7 and 102-8 at 4). The record reveals that Plaintiff was found guilty of assault, given disciplinary time, and assessed costs due to the injuries sustained by Defendants. The record also reflects that because the costs were unknown to Moslak at the time, he referred the matter to the Business Manager. (Id.)

While Plaintiff contends that he is not challenging the "amount" of the assessment, it is clear that if he was, he had a remedy available as set forth in DC-ADM 801 to request a hearing to challenge the amount of costs assessed. (Doc. 102-5, DC-ADM 801 VI. (O)(2), (3).) To the extent Plaintiff is actually contesting the fact of an assessment at all, this is an issue he had

the opportunity to challenge in his appeals from the misconducts. Assessments of cost are an allowable sanction, as set forth in DC-ADM 801 VI.(J)(4)(d). (Doc. 102-5 at 13). Plaintiff had the ability to challenge the misconduct proceedings, the punishment imposed, and the sufficiency of the findings of fact in the misconduct appeal process as set forth in DC-ADM 801 VI. L. (Doc. 102-5 at 15-17). There is no dispute in the record that Plaintiff utilized the appeal process. The record demonstrates this. (Doc. 102, Exs. G, H). Not only was Plaintiff advised that he could seek a formal review and must list the specific reasons for the review, but he did seek review and did not challenge the discipline received. (Id.) Plaintiff offers nothing to contradict these records. As such, due process was not denied to Plaintiff with regard to the cost assessment, and summary judgment is warranted in favor of the Defendants on this issue. An appropriate order follows.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: March 21, 2017

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2008 MEMORANDA\08-0449-01.wpd